UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-10008-CR-MOORE/SNOW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRADLEY DUANE LONG,

    Defendant.

_____

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the the Defendant's Motion to Suppress Physical Evidence (ECF No. 27) which was referred to United States Magistrate Judge, Lurana S. Snow, for Report and Recommendation. The Defendant is charged by Indictment with distribution and possession of child pornography. He seeks to suppress evidence seized pursuant to a warrant to search the Defendant's residence issued by the Honorable Mark H. Jones, Circuit Judge of the Sixteenth Judicial Circuit in and for Monroe County, Florida on February 28, 2022, on the ground that the information contained in the warrant application was too stale to support probable cause. The Motion is fully briefed and oral argument was conducted on August 15, 2022.

### I. DISCUSSION

#### A. Search Warrant Application

The application states that on February 2, 2022, based on a tip from Kik, a smartphone messenger application, law enforcement officers located an IP address associated with 16 uploaded images of child pornography and/or child erotica and a 39-second video displaying pre-pubescent child pornography. The tip related to the upload

and sharing with a group of users of these images by a Kik Messenger user on December 11-12, 2021. The search warrant affiant, Florida Department of Law Enforcement (FDLE) Special Agent Millard C. Quad, reviewed several of the images and confirmed that they contained pre-pubescent child pornography. Investigation revealed that the IP address of the user who uploaded and shared these images was associated with the Defendant's address in Key West, Florida and surveillance officers observed a motorcycle registered to the Defendant parked in one of the spaces assigned to the residence. The application describes in detail four of the uploaded images. (ECF No. 23-1 at 6-9)

According to the application, Agent Quad is a member of the South Florida Internet Crimes Against Children (ICAC) Task Force, funded by the U.S. Department of Justice, comprising 61 coordinated task forces representing more than 3,000 federal, state and local law enforcement and prosecutorial agencies. Agent Quad has completed numerous courses dealing with the investigation of computer and internet crimes against children and the use of peer-to-peer (P2P) networks to share child pornography on the internet. Additionally, the agent has executed numerous search warrants involving P2P networks, child pornography and CyberTips (investigative leads generated by the National Center for Missing and Exploited Children). Id. at 4-5.

The application also discusses in detail the characteristics of child pornography collectors:

> In the past, collectors of child pornography often possessed and maintained "hard copies" of child pornographic materials such as pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure locations. Child pornography collectors typically retained [these items] for many years. With the advent of technology, collectors of

> digital child pornography often maintain their digital or electronic collections in a format that is safe, secure and private, such as a computer and/or back-up storage discs or other forms of data storage devices, i.e. Microsoft Overdrive.

Id. at 12.

> The application further states:
>
> Child pornography collectors also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period.

Id.

The application also notes that in a properly controlled environment, the search for digital evidence by those with experience in the computer and cellular telephone field can "protect the integrity of the evidence and recover even 'hidden,' erased, compressed, password-protected, or encrypted files." Id. at 9.

### B. Applicable Law

In Illinois v. Gates, 462 U.S. 213, 238 (1983), the Supreme Court held that in issuing a search warrant, the task of a judge is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." In so holding, the Court recognized that search warrant affidavits "'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no place in this area.'" Id. at 235, quoting United States v. Ventresca, 380 U.S. 102, 108 (1965).

Review of the conduct of the police in obtaining and executing the search warrant for the defendant's residence is controlled by United States v. Leon, 468 U.S. 897 (1984). In creating what has been called a "good faith exception" to the exclusionary rule, the Court noted that in an ordinary case, a police officer cannot be expected to question a magistrate's probable cause determination or judgment that the form of the warrant is technically correct. However, suppression of evidence seized pursuant to a warrant still might be proper in those rare instances where the officer has no reasonable grounds for believing that the warrant was properly issued. Id. at 921-923. Therefore, the Court recognized four situations where a finding of good faith reliance would not be appropriate:

1. Where the judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, as discussed in Franks v. Delaware, 438 U.S. 154 (1978);

2. Where the issuing judge wholly abandoned his or her judicial role and becomes a "rubber stamp" for the police, as in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979);

3. Where the warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, as in Brown v. Illinois, 422 U.S. 590, 610-611 (1975); and

4. Where a warrant is so facially deficient, as where it fails to particularize the place to be searched or the items to be seized, that the executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

Here, counsel for the Defendant stated at oral argument that the Defendant relies on the third exception, contending that the information contained in the affidavit was too stale for official reliance upon it to be reasonable. The parties

agree that in the Eleventh Circuit, the governing case regarding staleness is <u>United States v. Bervaldi</u>, 226 F.2d 156 (11th Cir. 2000). There the court noted that in the context of probable cause, the staleness doctrine "requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues," but there is "no particular rule or time limit for when information becomes stale." <u>Id.</u> at 1264-65. To resolve this issue, "in addition to the length of time, courts should consider the 'nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.'" <u>Id.</u> at 1265 (quoting <u>United States v. Harris</u>, 20 F.3d 435, 450 (11th Cirt. 1994)).

The <u>Bervaldi</u> court pointed out that when considering the nature of the crime, courts have held that "'where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.'" <u>Id.</u> (quoting <u>United States v. Bascaro</u>, 742 F.2d 1335, 1345-1346 (11th Cir. 1984)). Similarly, "[r]esidnce in a house, like protracted and continuous criminal activity. . . generally is not transitory or ephemeral, but instead endures for some length of time." <u>Id.</u>

Evaluating these factors in cases involving child pornography, courts have held that time lapses ranging from two months to two years did not render the information stale. <u>United States v. Richardson</u>, No.11-20265-CR, 2011 WL 1979812 at* 3 (S.D.Fla. May 20, 2011) (two months considered a relatively short time); <u>United States v. McBurnette</u>, 382 Fed. App'x 813, 815 (11th Cir. June 10, 2010) (information not stale after nearly two years); <u>United States v. Schwinn</u>, 376 Fed. App'x 974, 979 (11th Cir. April 28, 2010) (information not stale after 10 months).

With regard to the nature of the offense and the habits of the accused, courts have focused on statements in search warrant affidavits which note that people involved with child pornography often store and trade images using multiple electronic devices, programs and applications and rarely if ever dispose of these materials. Also significant is the fact that even items which have been deleted can be recovered from computers and other electronic storage devices. See, Richardson at *3; United States v. Frank, No. 09-CR-20075, 2009 WL 2430909 at *6 (S.D. Fla. August 7, 2009); United States v. Frechette, 583 F. 3d 374, 378 (6th Cir. 2009); United States v. Miller, 450 F. Supp. 2d 1321, 1335 (M.D. Fla. 2006); United Stas v. Wiser-Amos, No. 3-07CR-42-M, 2007 WL 2669377 at *6-8 (W.D. Ky. Sept. 7, 2007).

As to the issue of whether the crime or crimes identified in the search warrant affidavit constitute an isolated instance or continuous conduct, courts have treated child pornography offenses as continuous in nature, since uploading or possessing multiple pieces of child pornography justifies characterizing the individual involved as a "collector." Richardson at *3 (citing United States v. Pappas, 592 F.3d 799, 803-804 (7th Cir. 2010)); Miller at 1335; Wiser-Amos at *6. The Defendant here argues that Richardson, Miller and other cases finding child pornography offenses to be continuous in nature have involved P2P file sharing rather than the mere uploading of pornographic images, and points out that the Wiser-Amos decision is not binding in this Circuit.

The final factor is the nature and function of the place to be searched. When the place to be searched is an individual's residence, the Second Circuit stated, "When a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that "images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their

homes.'" United States v. Irving, 432 F.3d 401, 416 (2nd Cir. 2005) (quoting United States v. Lamb, 945 F. Supp. 441, 460 (N.D.NY. 1996)). In such cases, courts have described an individual's residence as a "'secure operational base.'" Frechette, 583 F.3d at 379 (quoting United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009)). In sum, "traditional concepts of staleness that might apply to the issuance of search warrants for contraband or drugs do not mechanically apply to situations as here, where the object of the search is for images of child pornography stored on a computer." Miller, 450 F. Supp. 2d at 1335.

## C. Application to the Instant Case

The Defendant argues that the tip in this case related to an isolated instance rather than a pattern of continuous activity. He points out that the uploading occurred on December 11-12, 2021, but the warrant was not issued until February 28, 2022. He argues that during that time period, law enforcement officers could and should have investigated whether additional activity had taken place and corroborated the information contained in the tip. According to the defendant, the search warrant affidavit contains no evidence of continued criminal conduct involving the sharing of child pornography with others.

At the outset, the undersigned finds that the time lapse of 2 ½ months is not unduly long. In another child pornography case from this District, the court determined that a delay of five months was "not exceedingly long." Frank, 2009 WL 243909 at *6. The court pointed out that "[c]ommon sense dictates that people who obtain and/or share photographs online, whether related to child pornography or not, are likely to retain those photographs for future viewing." Id. Also of particular importance to the court was the statement in the search warrant affidavit that "'computer files or remnants of such files can be recovered months or even years after

they have been downloaded on a hard drive, deleted, or viewed via the internet,' and '[w]hen a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather that data remains on the hard drive until it is overwritten by new data.'" Id. As noted earlier, the affidavit in the instant case also points out that a forensic examiner can "recover even 'hidden,' erased, compressed, password-protected, or encrypted files." (ECF No. 23-1 at 9) For this reason, there was probable cause to believe that the images or remnants of the images from December 11-12, 2021 remained on a device associated with the Defendant's residence on February 28, 2022.

The undersigned also finds that the possession and sharing of 16 still images and one video of child pornography is not an isolated incident for purposes of the Brevaldi analysis. Courts addressing this issue have held that a person who uploads or possesses multiple images of child pornography qualifies as a "collector." Richardson at *3 (citing United States v. Pappas, 592 F.3d 799, 803-804 (7th Cir. 2010)); Miller at 1335; Wiser-Amos at *6. Therefore, the crimes described the search warrant affidavit here are deemed to be continuous in nature.

For these reasons, the undersigned finds that there was a fair probability that the items sought in the search warrant in the instant case would be found in the Defendant's residence on February 22, 2022, and the information contained in the affidavit was not too stale to support probable cause. Based on this finding, it is clear that none of the Leon exceptions applies to this case and the evidence seized pursuant to the warrant should not be suppressed.

### III. CONCLUSION

This Court having considered carefully the papers, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Motion to Suppress Physical Evidence (ECF No. 27) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 20th day of August, 2022.

*[signature]*

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record